UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA SCROGGINS,

                         Plaintiff,           Civil Action No. 16-11913
                                           Honorable Arthur J. Tarnow
                                           Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]

Plaintiff Lisa Scroggins ("Scroggins") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [12, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.**     **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Scroggins is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Scroggins' Motion for Summary Judgment [12] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On September 19, 2012, and March 12, 2013, Scroggins filed applications for DIB and SSI, respectively, alleging disability as of September 1, 2012. (Tr. 175-85). These applications were denied initially on October 4, 2013. (Tr. 110-13, 121-24). Scroggins filed a timely request for an administrative hearing, which was held on March 3, 2015, before ALJ Kevin Fallis. (Tr. 36-73). Scroggins, who was represented by attorney Lisa Watkinson, testified at the hearing, as did vocational expert Stephanee Leech. (*Id.*). On May 28, 2015, the ALJ issued a written decision finding that Scroggins is not disabled under the Act. (Tr. 11-30). On April 14, 2016, the Appeals Council denied review. (Tr. 1-5). Scroggins timely filed for judicial review of the final decision on May 27, 2016. (Doc. #1).

### B.    Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.    Background**

*1.    Scroggins' Reports and Testimony*

At the time of the administrative hearing, Scroggins was 51 years old, and at 5'4" tall, weighed 245 pounds.  (Tr. 43).  She had completed high school and subsequently earned an associate's degree.  (Tr. 44, 210).  Previously, she worked as a high school English teacher and tutor, but she alleges that she stopped working on September 1, 2012 because of her medical conditions.  (Tr. 46, 210).  At the time of the hearing, she was taking one college class (for the second consecutive semester) in an effort to "widen [her] environment a little bit rather than just sitting home all the time, doing nothing, sleeping."  (Tr. 45-46).

Scroggins alleges disability as a result of back and shoulder pain, headaches, asthma, and depression.  (Tr. 209).  When she first applied for disability, she was having "severe migraine headaches," which left her "crying like a baby."  (Tr. 48).  She testified that she still gets these

headaches two to four times a week, and they last "for hours."  (Tr. 51, 53).  After she applied

for disability benefits, she fell – and then was in a car accident – injuring her back and shoulder.

(Tr. 48, 53-54).  Scroggins also testified that her asthma causes shortness of breath and makes it

difficult for her to walk more than one block or carry more than five pounds.  (Tr. 48).  She uses

a nebulizer for breathing treatments four or five times a day.  (Tr. 49).  Scroggins claims she has

been prescribed a cane and uses it "most of the time."  (Tr. 55).

Scroggins also testified that she is depressed because she "can't work" and because some

of her children are incarcerated.  (Tr. 57).  She does not like being around people and gets panic

attacks in closed spaces.  (Tr. 58).  She also testified that her memory is "kind of really bad," but

she can concentrate on things she finds interesting.  (Tr. 59).  In terms of daily activities, she is

able to attend to her own personal care needs, microwave meals, shop in small stores, and attend

church, but she spends most of her days sleeping, watching television, reading, and listening to

music.  (Tr. 60-63, 222-23, 225-26).

### 2.    *Medical Evidence*

The Court has thoroughly reviewed Scroggins' medical record.  In lieu of summarizing

her medical history here, the Court will make references and provide citations to the record as

necessary in its discussion of the parties' arguments.

### 3.    *Vocational Expert's Testimony*

Stephanee Leech testified as an independent vocational expert ("VE") at the

administrative hearing.  (Tr. 67-72).  The ALJ asked the VE to imagine a claimant of Scroggins'

age, education, and work experience who can perform light work, with the following additional

limitations:  only occasional pushing and pulling; no climbing of ladders, ropes, or scaffolds;

occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling;

must avoid even moderate exposure to extreme cold, extreme heat, and humidity; must avoid even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases; must avoid even moderate use of hazardous, moving machinery; must avoid all exposure to unprotected heights; is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions and routine workplace changes; and is limited to only occasional and superficial interaction with the public and co-workers.  (Tr. 68).  The VE testified that the hypothetical individual would not be capable of performing any of Scroggins' past relevant work.  (*Id.*).  However, the VE further testified that the hypothetical individual would be capable of working in the jobs of bench assembler (60,000 jobs in the national economy), unskilled office clerk (150,000 jobs), and packer (250,000 jobs).  (Tr. 69).

> **D.      The ALJ's Findings**

At Step One of the five-step sequential analysis, the ALJ found that Scroggins has not engaged in substantial gainful activity since September 1, 2012 (the alleged onset date).  (Tr. 13). At Step Two, the ALJ found that Scroggins has the severe impairments of asthma, headaches, obstructive sleep apnea, osteoarthritis, degenerative disc disease, obesity, depression, anxiety, schizoaffective disorder, and substance abuse disorder.  (*Id.*).  At Step Three, he found that Scroggins' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 13-14).

The ALJ then found that Scroggins retains the residual functional capacity ("RFC") to perform light work, with the following additional limitations:  only occasional pushing and pulling; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; must avoid even moderate exposure to

5

extreme cold, extreme heat, and humidity; must avoid even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases; must avoid even moderate use of hazardous, moving machinery; must avoid all exposure to unprotected heights; is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions and routine workplace changes; and is limited to only occasional and superficial interaction with the public and co-workers.  (Tr. 16).

At Step Four, the ALJ determined that Scroggins is unable to perform any of her past relevant work.  (Tr. 28).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Scroggins is capable of performing a significant number of jobs that exist in the national economy.  (Tr. 29).  As a result, he found that Scroggins is not disabled under the Act.  (Tr. 30).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

6

(internal quotations omitted).   In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

In her motion, Scroggins argues that the ALJ's RFC assessment is not supported by

substantial evidence for several reasons, each of which is addressed below.[1]

### 1. Remand for Additional Evaluation of Consulting Examining Physician Sayyid's Report is Not Warranted

Scroggins first argues that the ALJ "failed to address the medical opinion of the State agency medical consultative examiner," Samiullah Sayyid, M.D. (Doc. #12 at 7). On September 26, 2013, Dr. Sayyid examined Scroggins, diagnosing her with moderate obesity, arthritis in the back and neck, history of fall, hypertension, chronic depression, poor memory, and migraine headaches. (Tr. 494-96). Neurological examination revealed no motor or sensory deficits, normal reflexes and coordination, and a negative Romberg sign. (Tr. 495). Her lungs were clear to auscultation without any adventitious sounds. (*Id.*). Dr. Sayyid found tenderness over the lumbosacral spine, with significantly reduced movements, and some restricted movement in the right shoulder joint. (*Id.*). In addition, Dr. Sayyid noted that Scroggins' stance and posture were normal, but observed that she had a "broad-based unpredictable gait and claims she was using a cane for support and pain for the last 1 year." (*Id.*). Dr. Sayyid further noted that Scroggins was unable to squat or walk on heels and toes, and had difficulty getting on and off the examination table. (*Id.*). On a form entitled "Neurologic and Orthopedic Supplemental Report," Dr. Sayyid opined that Scroggins can stand, but "not for long"; can bend, stoop, and carry, but on an unspecified "restricted" basis; and cannot squat and arise from squatting. (Tr. 497).

---

[1] Because Scroggins' challenges to the RFC assessment are very specific, and because the ALJ very thoroughly described the medical evidence pertaining to both her physical and mental impairments, the Court will not discuss all of this evidence in detail, but, rather, will simply focus on that evidence relevant to Scroggins' specific arguments. The Court notes, however, that much of the objective medical evidence of record – including x-rays, CT scans, and MRIs – reflect primarily normal findings. (*E.g.,* Tr. 386 (August 2012 head CT reveals no acute intracranial hemorrhage); 356, 558, 762 (lumbar spine x-rays in August 2012, November 2012, and May 2014 show only mild degenerative changes); 764 (March 2014 chest x-ray shows no acute pulmonary disease); 790 (March 2015 lumbar spine MRI shows primarily mild degenerative changes)).

Scroggins argues that the ALJ "is required to evaluate every medical opinion received" and, therefore, erred in "fail[ing] to evaluate Dr. Sayyid's opinions." (Doc. #12 at 8). In support of this argument, Scroggins cites Social Security Ruling ("SSR") 96-8p,[2] which provides, in relevant part: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (Doc. #15 at 1 (quoting *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *7 (July 2, 1996)).

The Court is not persuaded that the ALJ's failure to explicitly assign weight to Dr. Sayyid's opinion warrants remand. As an initial matter, the ALJ did not *ignore* Dr. Sayyid's opinion; indeed, he explicitly considered many of Dr. Sayyid's examination findings. (Tr. 22). The Sixth Circuit has recognized that while "it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion," the "fail[ure] to evaluate or discuss" a consultative examining physician's opinion does not necessarily warrant remand. *Kornecky*, 167 F. App'x at 505-08. Here, the ALJ explicitly considered Dr. Sayyid's examination findings (Tr. 22), and Dr. Sayyid's opinion as to Scroggins' limitations is extremely vague (can stand, but "not for long," and can bend, stoop, and carry, but on some unspecified "restricted" basis (Tr. 497)). The ALJ also discussed numerous medical records, particularly regarding Scroggins' ambulation, which were contrary to Dr. Sayyid's finding. *See infra* at 11 n. 3. Under the circumstances, the Court finds no error warranting remand in the ALJ's failure to explicitly assign weight to Dr. Sayyid's vague opinion. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x

---

[2] Initially, Scroggins cited SSR 96-6p in support of this argument. (Doc. #12 at 8). When the Commissioner pointed out that this Ruling applies only to "State agency medical and psychological consultants and other [Social Security] program physicians and psychologists," however (Doc. #14 at 7-8), Scroggins then cited SSR 96-8p in her reply brief (Doc. #15 at 1). Despite the Commissioner highlighting numerous shortcomings of Scroggins' case, this was the only issue she addressed in her reply.

485, 490 (6th Cir. 2005) (ALJ's failure to specifically address opinion of non-treating physician is not reversible error).

### 2.   *Scroggins Has Not Established the Need for a Cane*

Next, Scroggins argues that the ALJ "failed to address the opinion that [she] was prescribed a cane," asserting that a person "who uses a cane for ambulation cannot perform the standing, walking, and lifting components of light work." (Doc. #12 at 8 (citing Tr. 776)). This argument is without merit.

As an initial matter, the "opinion" to which Scroggins refers is not a medical opinion at all within the meaning of the applicable regulations. The regulations provide that, "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that *reflect judgments* about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§404.1527(a)(2), 416.927(a)(2) (emphasis added). Here, the document cited by Scroggins is merely a form, signed by a "company representative" of a medical equipment company, indicating that Scroggins was provided an orientation as to the use of and care for a cane. (Tr. 776). Nothing on that form indicates that the company representative is a "physician[] … or other acceptable medical source[]," nor does it indicate that the company representative made "judgments about the nature and severity of [Scroggins'] impairments." (Tr. 776). Because the form is not a medical opinion, there is no requirement that the ALJ explicitly mention or discuss it.[3]  *See, e.g., Kornecky*, 167 F. App'x at 508.

---

[3] Moreover, remand is not warranted for further evaluation of this form because Scroggins has failed, as a matter of law, to demonstrate a need for a cane. SSR 96-9p provides that: "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.,* whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Soc. Sec.*

3.      *Remand is Not Necessary for an Explicit Discussion*
        *of Scroggins' Receipt of State Disability Benefits*

Scroggins next argues that remand is warranted because the ALJ "failed to address the

fact that [she] is receiving State of Michigan disability benefits and has been since August 16,

2013."  (Doc. #12 at 9 (citing Tr. 780-86)).  The applicable regulations provide that:

> A decision by any nongovernmental agency or any other governmental
> agency about whether you are disabled … is based on its rules and is not
> our decision about whether you are disabled ….  We must make a
> disability … determination based on social security law.  Therefore, a
> determination made by another agency that you are disabled … is not
> binding on us.

20 C.F.R. §§404.1504, 416.904.  In support of her argument, however, Scroggins cites SSR 06-

03p, which provides that state disability decisions "cannot be ignored and must be considered."

(Doc. #12 at 9 (citing *Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

In this case, the ALJ did not explicitly discuss Scroggins' receipt of disability benefits

from the State of Michigan.  However, the ALJ specifically questioned Scroggins about her

receipt of these benefits during the hearing (Tr. 57), so he was obviously aware of – and, thus,

considered – this fact.  *See Daniels*, 152 F. App'x at 489 (holding that an "ALJ's failure to cite

specific evidence does not indicate that it was not considered"); *Kornecky*, 167 F. App'x at 508

("'[A]n ALJ can consider all the evidence without directly addressing in his written decision

---

*Rul. 96-9p*, 1996 WL 374185, at *7 (July 2, 1996).  Here, Scroggins points to no medical
documentation describing the specific circumstances in which she allegedly requires a cane.
Moreover, Dr. Sayyid specifically observed at the consultative examination that Scroggins was
not utilizing a cane at that time.  (Tr. 495).  The ALJ also noted numerous medical records that
belie Scroggins' contention regarding her ambulation.  (Tr. 20 ("Gait is steady on narrow base."),
21 ("She has full strength in the four extremities.  Gait is steady on narrow base."), 22 ("Stance
and posture was normal.  Although not limping, [she] had broad-based unpredictable gait and
claims that she was using a cane for support and pain for the last 1 year.  *She did not carry one at
this time* . . .") (emphasis added), 23 ("Gait is steady on narrow base."); 24 ("No radiation of the
pain to the lower [extremities] . . . straight leg raising test was negative, 'no sensory, motor or
vascular deficit in the lower [extremities]. . . '[Claimant] advised to . . . increase physical
activity/walking to 30-60 minutes daily.'")).

every piece of evidence submitted by a party.'"").  Moreover, Scroggins does not even attempt to indicate what evidence the State considered in arriving at its disability determination, nor is there any such indication in the exhibit she cites, which merely specifies the types of benefits that were approved and the amounts that were paid.  (Tr. 780-86).  Thus, while it would have been preferable for the ALJ to have specifically weighed the state disability conclusion, his failure to do so is at most harmless error which does not warrant remand.[4]  *See, e.g., Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) ("strict compliance with the regulations" was not necessary where treating physician's opinion contained only "rudimentary indications that lack an accompanying explanation").

### 4. *The ALJ Permissibly Discounted the Opinion of Scroggins' Treating Physician, Dr. Filos*

Scroggins next argues that the ALJ erred in according little weight to the opinion of her treating pulmonologist, Orlando Filos, M.D.  (Doc. #12 at 9-10).  On August 21, 2013, Dr. Filos completed a Medical Source Statement in which he opined that Scroggins can occasionally lift less than 10 pounds; stand for less than two hours in an eight-hour workday; sit for less than six hours in an eight-hour workday; is limited in pushing and pulling in both the upper and lower extremities; can never climb, balance, kneel, crouch, crawl, or stoop; and can have only limited exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards, fumes,

---

[4] Even if the Court were to assume that the state's disability decision maker relied on the opinions of Scroggins' pulmonologist, Orlando Filos, M.D. in reaching the disability conclusion – remand still would not be warranted because the ALJ properly explained why he gave those opinions little weight.  *See* Section II.F.4, *infra*.

odors, chemicals, and gases.   (Tr. 427-30).    When asked to describe the "clinical findings"

supporting these conclusions, Dr. Filos indicated that Scroggins has "severe airflow obstruction"

and "severe shortness of breath" with even mild to moderate activity.  (*Id.*).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling

weight if the treating source opinion is 'well-supported by medically acceptable clinical and

laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in

[the] case record.'"   *Blakley*, 581 F.3d at 406 (internal quotations omitted).   While treating

source opinions are entitled to controlling weight under these circumstances, it is "error to give

an opinion controlling weight simply because it is the opinion of a treating source" unless it is

well-supported and consistent with the record as a whole.   *Soc. Sec. Rul. 96-2p*, 1996 WL

374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by

objective medical evidence.").   If the ALJ declines to give a treating physician's opinion

controlling weight, he must document how much weight he gives it, considering a number of

factors, including the "length of the treatment relationship and the frequency of examination, the

nature and extent of the treatment relationship, supportability of the opinion, consistency of the

opinion with the record as a whole, and the specialization of the treating source."   *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ

must "give good reasons" for weight given to treating source opinion)).

In this case, the ALJ specifically considered Dr. Filos' opinion but gave it "little weight,"

finding it inconsistent with the other medical evidence of record, as well as Dr. Filos' own

examinations and conclusions.  (Tr. 26-27).  This reasoning is amply supported by the record.

For example, the ALJ noted that, on August 30, 2013 – just a week after issuing the opinion at

issue – Dr. Filos noted that, since Scroggins' last visit (on October 17, 2012), "her pulmonary status has significantly improved" and she had "noticed significant improvement in her shortness of breath and chest tightness."[5]   (Tr. 26 (quoting Tr. 519)).   The ALJ further noted that, on examination, Scroggins had "[m]arkedly improved bilateral air exchange" and her lungs were "[c]lear to auscultation with no wheezes heard."   (*Id.*).   The ALJ further cited Dr. Filos' conclusion at that visit, which was:   "[Scroggins] has presented significant improvement in her respiratory status and episodes of bronchospasm since using her Dulera on a regular basis.   Her spirometry today shows evidence of improvement … She has actually improved when compared to her baseline from 2012 … Overall, she has presented improvement symptomatically and marked improvement in her spirometry." (Tr. 27 (quoting Tr. 520)).   The ALJ then said that, at a March 31, 2014 visit, Dr. Filos noted that Scroggins "has actually been doing quite well from a respiratory standpoint," and that examination of the lungs revealed that they were clear to auscultation bilaterally with no wheezes or rhonchi and good symmetrical exchange.   (*Id.* (quoting Tr. 514)).   And, the ALJ noted that, on September 5, 2014, Dr. Filos again indicated that Scroggins "has been doing quite well from a respiratory standpoint," and examination of the lungs was normal.   (*Id.* (quoting Tr. 513)).   The ALJ further cited Dr. Filos' conclusion that: "[Scroggins'] respiratory status has remained stable.   Her underlying asthmatic bronchitis continues to be controlled well with Dulera, albuterol nebulized solution and beta agonist MDIs

---

[5] The Court notes that Scroggins was hospitalized for a few days in March 2013 with an acute asthma exacerbation.  (Tr. 477-92).  A chest CT performed at that time was unremarkable as to Scroggins' lungs (Tr. 490), but pulmonary function testing showed "significant deterioration" when compared to testing done in 2012 (Tr. 441).  At the time, however, Scroggins was still smoking (against medical advice) and was not using her prescribed medication (Dulera).  (Tr. 441).  At a follow-up visit to Dr. Filos on July 10, 2013, he stressed to Scroggins that it was "imperative that she completely stop cigarette smoking" and use Dulera regularly.  (Tr. 442).  As the ALJ noted, subsequent medical records show her condition then rapidly improved.  (Tr. 22, 23, 513-14, 519-20).

14

as needed."  (*Id.*).  The fact that Dr. Filos' opinion was at odds with his own treatment notes and other medical evidence of record were valid reasons to discount his opinion, and the ALJ's findings in these respects are supported by substantial evidence.[6]  *See* 20 C.F.R. §416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  For all of these reasons, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Filos' opinion.

> 5.   *The ALJ Permissibly Discounted the Joint Mental Health*
> *Opinion of Dr. Gotlib and Social Worker Mr. Tidwell*

Scroggins also argues that the ALJ erred in giving little weight to the joint opinion of her mental health providers, Henry Tidwell (a therapist) and Dr. Michael Gotlib (a psychiatrist). (Doc. #12 at 10 (citing Tr. 564-65)).  On February 4, 2015, Mr. Tidwell completed a Mental Medical Assessment of Ability to Do Work-Related Activities, which Dr. Gotlib co-signed, opining that Scroggins has serious limitations in several areas and "no useful ability to function" in the areas of dealing with work stresses and maintaining attention and concentration.  (Tr. 564-65).  They further indicated that Scroggins "has mood disorder with occasional psychosis, especially when not medicated," does not "do well with stress," and "has problems with constructive criticism and being told no."  (Tr. 565).  The ALJ considered this opinion, concluding that, "To the extent Mr. Tidwell and Dr. Gotlib are opining that [Scroggins] cannot perform any work on a regular and sustained basis, that opinion is given little weight because it

---

[6]  In her motion, Scroggins does not attack the ALJ's reasoning or otherwise attempt to demonstrate that his analysis is lacking in evidentiary support; instead, she merely relies on her own testimony "that her nebulizer breathing treatments are done four to five times per day for fifteen minutes at a time which would greatly interfere with a normal workday."  (Doc. #12 at 9). However, the ALJ found Scroggins' testimony less than fully credible (Tr. 18), a finding that she does not challenge, and which is entitled to deference.  *See, e.g., Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are virtually unchallengeable.") (internal quotations omitted).

is inconsistent with the above-cited medical records of evidence."  (Tr. 27).

As an initial matter, as a social worker, Mr. Tidwell is neither a "treating source" nor an "acceptable medical source" under the applicable regulations.   *See* 20 C.F.R. §§404.1502, 404.1513(d), 416.902, 416.913(d).  Although Dr. Gotlib co-signed Mr. Tidwell's February 2015 opinion (Tr. 564-65), Scroggins does not assert that Dr. Gotlib was one of her "treating sources," nor is there any indication in the record that this was the case.  As such, as an "other source" opinion, Mr. Tidwell's opinion was not presumptively entitled to controlling weight, nor was the ALJ required to give good reasons for discounting that opinion.  *See, e.g., Schalk v. Comm'r of Soc. Sec.*, 2016 WL 8115403, at *5 (E.D. Mich. Aug. 9, 2016); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Moreover, the ALJ did in fact give good reasons for discounting this opinion – namely, that it was inconsistent with other medical evidence of record.  (Tr. 27).  For example, the ALJ noted that, in May 2013, Scroggins was described as "stable [with] the meds," with an appropriate affect, unremarkable psychomotor behavior, appropriate attention and concentration, intact memory, and appropriate thought content and judgment.   (*Id.* (citing Tr. 414-15)).  Similarly, the ALJ noted that, in September 2013, a mental health note reflects that her progress was "fair," with "some improvement."  (*Id.* (citing Tr. 708)).  In February 2014, Mr. Tidwell noted that Scroggins "was seen in therapy 0 times this quarter … 3 no shows in a row."  (*Id.* (citing Tr. 670)).  In May 2014, her progress was described as "Moderate, as indicated by increase[d] attendance, and plan to be more assertive with Son from prison."  (Tr. 27 (citing Tr. 635)).  And, the ALJ noted that, in November 2014, Scroggins' mental status examination showed that her affect, thought content, judgment, and attention and concentration were appropriate, and her memory was intact.  (*Id.* (citing Tr. 584)).  Thus, the ALJ's decision to

discount the opinion of Mr. Tidwell and Dr. Gotlib as inconsistent with other evidence of record is supported by substantial evidence.

Finally, Scroggins provides no basis for the Court to reject the ALJ's evaluation of Mr. Tidwell's opinion, but, rather, merely points to other evidence in the record purportedly demonstrating that her "condition is more severe than the ALJ has indicated in his RFC."  (Doc. #12 at 10).  For example, Scroggins cites evidence that her affect was anxious and depressed in November 2013; that she was anxious, depressed, and irritable, with complaints of fatigue, loss of self-esteem and low energy in March 2014; and that she voiced "similar complaints" and had similar "affect irregularities" at other visits between May and September 2014.  (*Id.* (citing Tr. 591, 612, 617, 629, 640, 659, 694, 733)).  It is not the function of this Court, however, to re-weigh evidence; rather, as noted above, *supra* at 7, if substantial evidence supports the ALJ's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported the opposite conclusion.  *See, e.g., Blakley*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'"); *Warner,* 375 F.3d at 390; *Longworth*, 402 F.3d at 595.[7]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[7]  Scroggins also briefly argues that the ALJ "failed to consider the side effects of [her] medications," citing her own testimony that "her medication made her sleepy, caused memory problems and made her feel stagnated."  (Doc. #12 at 10-11).  This is incorrect:  in considering Scroggins' allegations of disability, the ALJ expressly noted her statements "that her medications make her dizzy, tired, and sleepy" (Tr. 17) and "cause memory problems" (Tr. 18).  However, as previously noted, *supra* at footnote 6, the ALJ found Scroggins less than fully credible, a finding she has not challenged and which is supported by substantial evidence.  Thus, this argument is without merit.

III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

for Summary Judgment [14] be GRANTED, Scroggins' Motion for Summary Judgment [12] be

DENIED, and the ALJ's decision be AFFIRMED.

Dated: March 7, 2017                           s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                               United States Magistrate Judge


<u>**NOTICE TO THE PARTIES REGARDING OBJECTIONS**</u>

Within 14 days after being served with a copy of this Report and Recommendation and

Order, any party may serve and file specific written objections to the proposed findings and

recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P.

72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any

further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. C. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich.

LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the

objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 7, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

19